NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAYMOND O'BLENIS,<br><br>       Plaintiff,<br>v.<br><br>NATIONAL ELEVATOR INDUSTRY PENSION PLAN *and its* PLAN ADMINISTRATOR, INTERNATIONAL UNION OF ELEVATOR CONSTRUCTORS LOCAL UNION NO. 1, MICHAEL RIEGGER, *and* JOHN DOES 1 – 10,<br><br>       Defendants. | Civil Action No. 2:13-cv-05842 (SRC)(CLW)<br><br>**OPINION & ORDER** |

  **THIS MATTER** comes before the Court upon motion by Defendants National Elevator Industry Pension Plan ("Plan") and the Board of Trustees of the National Elevator Industry Pension Plan ("Trustees" and, collectively, "Defendants"), seeking a protective order forbidding the disclosure or discovery of communications to Plaintiff Raymond O'Blenis ("Plaintiff") which occurred on and after May 7, 2013 among the Plan, the Trustees, and the attorneys serving as Plan counsel. The Court declined to hear oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure and, for the reasons set forth below, the Court grants Defendants' motion.

  On September 30, 2013, Plaintiff filed suit against Defendants pursuant to the Employee Retirement Income Security Act of 1974, 29 USC § 1001, et seq. ("ERISA"), alleging a breach of fiduciary duty in the administration of the Plaintiff's pension benefits. (Complaint, ¶¶ 7-8, 39-43, ECF No. 1.) In short, Plaintiff alleges that "[a]dvice [he] received from Defendants materially misrepresented his status with respect to the amount of his monthly pension benefit [and] [s]aid misrepresentations were made by fiduciaries and those acting as agents of fiduciaries[]" such that

1

he retired and received a monthly pension benefit that was significantly lower than that to which he believed himself entitled. (Compl., ¶¶ 19-31, 40-41.)

On December 29, 2014, Defendants filed the instant motion pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and Rule 37.1 of the Local Civil Rules "request[ing that] the Court issue a Protective Order finding that the attorney-client privilege protects applicable communications between the Plan, its Board of Trustees[,] and Plan counsel which occurred on and after May 7, 2013." (ECF No. 23-1.) In particular, Defendants seek to protect deposition testimony of James Govannicci, the Director of Pension and Eligibility Operations for the Plan, regarding communications with Plan counsel about Plaintiff's second appeal of his pension determination as well as any other documents Defendants have withheld from May 7, 2013 onward.

On January 19, 2014, Plaintiff filed his opposition. (ECF No. 27.) Plaintiff argues that the communications at issue are discoverable because they pertain to pension claims administration and are not protected legal advice. Plaintiff further argues that, even if the communications implicate attorney-client privilege, then the "fiduciary exception" to attorney-client privilege renders discoverable the communications and related documents. Plaintiff accordingly requests disclosure of "all items in the Privilege Log up until" the date on which Plaintiff filed suit.

Pursuant to Federal Rule of Civil Procedure 26(b)(1), parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. However, "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). Pursuant to Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" The Court accordingly

2

may "forbid[] the disclosure or discovery" or "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1). The party seeking the protective order must demonstrate good cause. Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994). "'Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure.'" Id. at 786 (quoting Publicker Indus. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984)). Such injury must be shown with specificity, i.e., "'[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing.'" Id. at 786 (quoting Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986), cert. denied, 484 U.S. 976 (1987)). The decision whether to issue a protective order is within the sound discretion of the Court and, to determine whether good cause exists for the issuance of a protective order, the Court may consider whether disclosure will violate any privacy interests, whether the sharing of information among litigants will promote fairness and efficiency, and whether public or private interests dictate the result. Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995) (citing Pansy, 23 F.3d at 787–91).

Here, Defendants seek a protective order on the basis of attorney-client privilege.[1] "[I]t is well established that '[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged.'" Wachtel v. Health Net, Inc., 482 F.3d 225, 230-31 (3d Cir. 2007) (quoting Fisher v. United States, 425 U.S. 391, 403 (1976)). Indeed, the attorney-client privilege is "the most sacred of all legally recognized privileges, and its preservation is essential to the just and orderly operation of our legal system." United States v. Bauer, 132 F.3d 504, 510 (3d Cir.

---

[1] The Court notes that the work product doctrine is "distinct from and broader than the attorney-client privilege." U.S. v. Nobles, 422 U.S. 225, 238 (1975); In re Cendant Corp. Sec. Litig., 343 F.3d 658, 661–62 (3d Cir. 2003). While the parties concentrate on attorney-client privilege in their respective briefs, the Privilege Log contains several assertions of privilege premised solely on grounds of work product. (ECF No. 23-2.) The Court declines to address whether these items are privileged, as a particularized request to protect or compel such communications is not properly before the Court.

3

1997). Further, "its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice" and, accordingly, the broad scope of the privilege "extends to verbal statements, documents and tangible objects conveyed by both individual and corporate clients to an attorney in confidence for the purpose of any legal advice." Haines v. Liggett Grp. Inc., 975 F.2d 81, 90 (3d Cir. 1992), as amended (internal citations and quotations omitted); Klitzman, Klitzman & Gallagher v. Krut, 744 F.2d 955, 960 (3d Cir. 1984). Such attorney-client communications must be encouraged because "the administration of justice in a complex society depends upon the availability of sound legal advice, and in turn, the soundness of legal advice depends upon clients' willingness to present full disclosures to their attorneys." Wachtel, 482 F.3d at 231. The attorney-client privilege applies where a party seeking to invoke the privilege demonstrates that 1) a communication is made by or to an attorney, 2) who is acting as a lawyer with respect to the communication, and 3) the communication was made primarily for the purpose of securing an opinion of law, legal services, or assistance in a legal proceeding. Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 862 (3d Cir. 1994); In re Grand Jury Investigation, 599 F.2d 1224, 1233 (3d Cir. 1979).

      The following facts bear on the Court's determination of whether the attorney-client privilege and fiduciary exception apply to the communications at issue. Plaintiff is a retired Plan participant who began to receive pension benefit payments from the Plan on September 1, 2010. (Govannicci Decl. ¶ 2, ECF No. 23-5.) Plaintiff disputed the Plan's calculation of his monthly benefit amount, appealed the calculation to the Trustees, and the Trustees denied this appeal on February 22, 2012. (Govannicci Decl. ¶¶ 3-5; McIntire Decl. Ex. C, at 53-54, ECF No. 23-6.) Plaintiff thereafter retained counsel. On April 15, 2013, Plaintiff's counsel contacted Plan counsel

regarding a draft "pre-litigation appeal." (Capuano Decl. ¶¶ 2-3, Ex. A, ECF No. 23-4; McIntire Decl. ¶¶ 2-3; Vance Decl. ¶ 3, ECF No. 27-1.) On May 7, 2013, Plaintiff's counsel transmitted to Plan counsel said document, which is captioned "Draft – for Counsel's Review" and "Pension Appeal Pursuant to ERISA." (Capuano Decl. ¶¶ 2-3, Ex. A; McIntire Decl. ¶¶ 3-4, Ex. B; Govannicci Decl. ¶ 6.) Later that day, Plan counsel contacted Plaintiff's counsel, who expressed a desire to avoid litigation and pursue an informal resolution of the pension appeal. (McIntire Decl. ¶ 5; Vance Decl. ¶¶ 4-7.) Plan counsel stated that Plaintiff "had exhausted his administrative remedies and was free to file suit at any time." (McIntire Decl. ¶ 5.) In addition, Plan counsel reviewed the draft letter and

> realized that [Plaintiff's counsel] was not contending that the Trustees had misinterpreted the Plan document or otherwise arguing that [Plaintiff] satisfied the eligibility requirements of an Early Retirement Pension. Instead, this Appeal Narrative indicated that [Plaintiff's counsel] had taken the position that the Trustees were equitably estopped from denying his client an Early Retirement Pension because of a series of alleged fiduciary breaches on the part of the Trustees, Plan employees and officers of the [union].
>
> [. . .]
>
> [Plan counsel] concluded that this was not a typical appeal where a participant is alleging that he or she was being denied a benefit provided under the terms of the Plan document. Rather, [Plaintiff's counsel] presented the Plan and Plan counsel with a legal memorandum in support of [Plaintiff's] right to equitable relief.

(McIntire Decl. ¶ 8.) Plan counsel further "concluded that [Plaintiff's counsel] was seeking a pre-litigation settlement as much as a second hearing before the Board of Trustees." (Id.) Mr. Govannicci likewise characterized the draft letter as a "second appeal" in which Plaintiff "alleged that the Plan's Board of Trustees had breached their fiduciary duty[, that] the Plan was equitably estopped from not providing [Plaintiff] the monthly pension benefits he sought," and that the pension benefits calculation violated ERISA. (Govannicci Decl. ¶ 6.) The communications between counsel on May 7, 2013 were the last between the attorneys until September 22, 2013.

5

(McIntire Decl. ¶ 10.) On September 23, 2013, the Trustees denied the second appeal. (Vance Decl. ¶ 8; Second Appeal Denial, ECF No. 27-3; Govannicci Decl. ¶ 7.) Plaintiff filed the instant suit one week later. (Compl.)

Defendants contend that the nature of Plaintiff's pension appeal took a critical turn on May 7, 2013 such that attorney-client protection applies to communications on that date and thereafter. The Court agrees. While the Court recognizes the representation of Plaintiff's counsel that he sought to resolve the matter informally, it cannot be concluded that Plan counsel shared this sentiment or proceeded in a manner consistent with mere claims administration. Indeed, Plan counsel credibly certify that the substance of the draft appeal—i.e., that it is structured as a legal brief and that its arguments differ markedly from those presented in the first appeal—prompted a change in posture from Defendants' perspective such that they developed a strong belief that Plaintiff would file suit. Plan counsel likewise credibly represent that they subsequently treated communications among Plan counsel, the Plan, and the Trustees in relation to Plaintiff's case as attorney-client privileged. Moreover, the Court is mindful of the substantial privacy interest in maintaining the confidentiality of attorney-client communications as well the prejudice that disclosure would work against Defendants. The Court therefore is satisfied by a preponderance that the communications among Plan counsel, the Plan, and the Trustees in relation to Plaintiff's case were confidential communications to and from counsel and were made for the purpose of obtaining and providing legal advice for the Plan. The Court accordingly concludes that the communications at issue are protected by attorney-client privilege.

Plaintiff maintains that the communications nonetheless are discoverable because the fiduciary exception applied up until the filing of the instant suit. The fiduciary exception stems from the principle that an ERISA fiduciary has an obligation "to provide full and accurate

6

information to the plan beneficiaries regarding the administration of the plan" including the obligation to "make available to the beneficiary, upon request, any communications with an attorney that are intended to assist in the administration of the plan." In re Long Island Lighting Co., 129 F.3d 268, 271–72 (2d Cir. 1997) (citations omitted). This is because, in the fiduciary context, "it is the beneficiary, rather than the trustee, who is the 'client'" for purposes of the attorney-client privilege. Wachtel, 482 F.3d at 232; see also United States v. Mett, 178 F.3d 1058, 1063 (9th Cir. 1999). Thus, many courts have held that an entity acting in the capacity of ERISA fiduciary is barred from asserting the attorney-client privilege against plan beneficiaries on matters of plan administration. Wachtel, 482 F.3d at 229-30 (collecting cases from sister circuits as well as from district courts in the Third Circuit). The exception does not apply, however, where the interests of the fiduciary and the beneficiaries are sufficiently divergent. Id. at 234; see also Mett, 178 F.3d at 1063–64; Wildbur v. ARCO Chemical Co., 974 F.2d 631, 645 (5th Cir. 1992).

As described above, the communications at issue were not merely claims administration in light of the substance of the second appeal, the attendant particularized prospect of litigation, the communications among opposing counsel, and Defendants' and Plan counsel's consequent approach to the case. That is, on the facts presented, the interests of the fiduciary and the beneficiary were sufficiently divergent for the fiduciary exception not to apply. In particular, the second appeal and the associated attorney communications differ greatly from a simple appeal of a denial or miscalculation of benefits and therefore signify a compelling divergence of interests. Where, as here, a fiduciary seeks and obtains legal advice for its own defense in contemplation of adversarial proceedings with a beneficiary—and not merely with respect to the administration of benefits—the fiduciary exception does not apply. See Wachtel, 482 F.3d at 233. The Court therefore concludes that the fiduciary exception does not require disclosure of the communications

at issue.

In light of the foregoing, the Court concludes that, for good cause shown and upon a preponderance of the evidence, Defendants' communications with counsel and the testimony of Mr. Govannicci which took place on and after May 7, 2013 are protected by the attorney-client privilege.

**ACCORDINGLY, IT IS** on this 18th day of June, 2015,

**ORDERED** that Defendants' motion for a protective order is **GRANTED**; and

**ORDERED** that the Clerk shall terminate ECF No. 23.

*s/Cathy L. Waldor*
**CATHY L. WALDOR**
**United States Magistrate Judge**