<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| RAYMOND O'BLENIS,  :<br>  :<br>  Plaintiff, :<br> v. :<br>  :<br> NATIONAL ELEVATOR INDUSTRY :<br> PENSION PLAN, INTERNATIONAL :<br> UNION OF ELEVATOR :<br> CONSTRUCTORS LOCAL UNION NO. :<br> 1, MICHAEL RIEGGER, :<br>  :<br>  Defendants. :<br>  : | **Civil Action No. 13-cv-5842 (SRC)**<br><br>**OPINION** |

<u>**CHESLER**</u>, District Judge

This case comes before the Court upon the motions for summary judgment filed by Defendants. Plaintiff opposes the motions. The Court has considered the parties' submissions and proceeds to rule without oral argument. For the reasons expressed in this Opinion, the Court will grant summary judgment in favor of Defendants, and this case will be closed.

**I.    BACKGROUND**

   **A.  Facts**

In this case, a former union member seeks pension benefits beyond those provided for in his pension plan based on an allegedly misleading statement made by a union official.

Plaintiff Raymond O'Blenis ("Plaintiff" or "Mr. O'Blenis") worked as an elevator mechanic and operator for many years, and during that period he was a member of Defendant the International Union of Elevators Constructors Local No. 1 ("Local 1"). Plaintiff was enrolled in

1

Defendant the National Elevator Industry Pension Plan ("the Plan"), a multiemployer pension plan. The Plan's enrollees accrue benefits while working for an employer that is covered by a collective bargaining agreement that requires those employers to contribute to the Plan.

In 2006, Plaintiff lost his covered employment. In 2010, he secured a job as an elevator inspector for the State of New Jersey, which was not covered employment.

Around that time, Plaintiff called Local 1, located in Long Island City, New York, and told them he needed the income that he would receive from the new job, and that he therefore needed to leave Local 1. Plaintiff claims that he spoke with Defendant Michael Riegger ("Mr. Riegger"), Local 1's secretary-treasurer, who allegedly informed him that if he applied for his pension benefits at that time, he would receive approximately $2,800 each month. Mr. Riegger gave Plaintiff the telephone number for the Plan, whose office is located in Newtown Square, Pennsylvania. Mr. Riegger denies that he gave Plaintiff an estimate of his benefits.

In April of 2010, Plaintiff called the Plan. The Plan's Benefits Office mailed him an application for benefits. The Plan also sent him a calculation of benefits sheet dated April 12, 2010 ("the April 2010 calculation sheet"). That document reported that Plaintiff's normal pension benefit would have been $2,823.66, but that because Plaintiff was taking an "early vested" withdrawal, it would be reduced by half:

> Normal Benefit: . . . $2,823.66
> …
> Benefit Rate:
> Pension Type: EARLY VESTED
> Type Reduc.: 50.00% = $1,411.83

[Docket Entry 34, Doc. 23]

The document then states the amount of monthly benefits that Plaintiff would receive under the three forms of benefits available to him:

        Payment Options    Factor        Benefit
        Straight Life       100.0000     $1,411.83
        5 Year Certain    98.9800       $1,397.43
        10 Year Certain   96.3400       $1,360.16

[Id.]

Finally, the sheet provides Plaintiff's benefit deductions if he were to select health insurance. Id. ("Deductions – If elected . . . . Health Insurance – Self[:] $650.00 . . . . Dental & Vision Care Insurance[:] $74.00.").

In September of 2010, the Plan's Benefits Office received Plaintiff's application for benefits, which was incomplete. The Plan sent Plaintiff a request for additional information, and it also sent him a calculation sheet that was updated to reflect the elections that Plaintiff had made in his application. That sheet, dated September 9, 2010 ("the September 2010 calculation sheet"), again relayed that Plaintiff's "normal benefit" would be $2,823.66, but that it was to be reduced due to his early withdrawal:

        Pension Type: EARLY VESTED
        Type Reduc.: 52.00% = $1,468.30.

[Docket Entry 34, Doc. 24].

Instead of again stating the three available payment options, this document only reflect Plaintiff's payment election and resulting benefit:

        Payment Options    Factor        Benefit
        Straight Life       100.0000     $1,468.30

[Id.]

Last, this calculation sheet was updated to reflect deductions for Plaintiff's election of health insurance, as well as dental and visual care insurance.

Plaintiff submitted a completed application to the Plan. On September 27, 2010, the Plan's Benefits Office sent Plaintiff a letter stating that his application had been approved, and

informing Plaintiff that if he believed any calculations were incorrect with respect to his pension benefits, he should contact the Plan after he received his first benefits check:

> On behalf of the Board of Trustees, we are pleased to inform you that your application for a pension to the NEI Pension Plan has been approved . . . . The attached calculation sheet indicates the factors used in determining the amount of your monthly payment. If you believe that any of the factors utilized are incorrect, you may request that your pension be reviewed by sending a written request to the Fund Administration Office within one month of the date you receive your first pension check . . . . If you have any questions, please do not hesitate to contact us.
>
> [Docket Entry 31, Doc. 7, Pg. 34].

As referenced in that excerpt, the Plan included in that mailing an additional, finalized calculation sheet that informed Plaintiff of the benefits that he would receive ("the final calculation sheet"). As with the earlier documents, the final calculation sheet informed Plaintiff of the reduction in benefits that he should expect:

> Normal Benefit: [] $2,823.66
> ….
> Pension Type: EARLY VESTED
> [Type] Reduc.:  52% = $1,468.30
> ….
> Payment Options     Factor        Benefit
> Straight Life       100.0000      $1,468.30
>
> [Id. at Pg. 36].

As with the earlier documents, the final calculation sheet enumerated Plaintiff's health-election deductions. Unlike the earlier documents, however, the final calculation sheet also informed Plaintiff of the precise "net" pension payment he would receive each month:

> Total Deductions . . . $796.00
> Net amount of pension payable to retiree (monthly) $672.30
>
> [Id.].

4

Last, the one-page sheet informed Plaintiff that he was entitled to retroactive benefits from September 1, 2010 until November 1, 2010. The sheet provided a calculation that multiplied Plaintiff's pension entitlement, $1,468.30, by three months, and then reduced it for Plaintiff's health insurance deductions. Plaintiff's net entitlement of pension benefits for three months was expressly stated to be $2,016.90.

It is not disputed that Plaintiff received and reviewed this final calculation sheet. [Docket Entry 40, Par. 22]. He now contends that he misunderstood the calculation sheets and believed that he was entitled to the "normal benefit" of $2,823.66. He did not contact the Plan to address the reductions.

Plaintiff began to receive direct deposits of his pension benefits into his bank account. As reported in the calculation sheets, the deposits were for $672.30 each month. Plaintiff, however, did not balance his bank accounts, and he therefore did not notice the amount that was being deposited. In 2011, Plaintiff went to the bank to access money from his savings account. It was at this time that he discovered the less-than-expected pension payments.

Plaintiff eventually pursued an administrative appeal of the Plan's calculation of his benefits. In support of his effort, Plaintiff generated a video interview in which he discusses the circumstances of his losing covered employment, Mr. Riegger's alleged statements to him, and Plaintiff's serious health and financial difficulties. The Plan's Board of Trustees denied Plaintiff's appeal. In a letter dated February 22, 2012, the Plan explained why its calculation of Plaintiff's entitlement was correct:

> According to our records, you last worked in Covered Employment in September 2006 and were laid off at the age of 53 years and one month. You retired with an Early Vested Retirement effective September 1, 2010 at the age of 57 . . . . Since you terminated your Covered Employment prior to age 55, you were not eligible for an Early Retirement and therefore were only eligible for 52% of your

5

> pension upon the commencement of your Early Vested Retirement. Based on the above, it has been determined that your monthly pension benefit was correctly calculated.

[Docket Entry 31, Doc. 7, Pg. 50].

In May of 2013, Plaintiff submitted a second administrative appeal, claiming ERISA equitable estoppel and a breach of fiduciary duty. The Plan's Trustees again denied Plaintiff's appeal. In a letter dated September 23, 2013, the Plan explained:

> [T]he Trustees have found no evidence that the Pension Plan made a material representation indicating that Mr. O'Blenis was entitled to a monthly pension benefit in excess of the amount of the Early Vested Pension benefit he currently receives. Moreover, even though the record indicates that Mr. O'Blenis may have misunderstood the pension statements he received from the Pension Plan, the Trustees question whether Mr. O'Blenis' misunderstanding of those statements was reasonable in light of the fact that the statements he received were the same statements all Participants receive at the time they apply for a pension or inquire as to the amount of their pension at a given time. Finally, even if one were to assume for the sake of argument that Mr. O'Blenis reasonably relied on a material misrepresentation by the Pension Plan, the Trustees have concluded that this case does not establish "extraordinary circumstances" as that term is understood by the federal courts.

[Id. at page 115].

### B. Procedural History

On September 30, 2013, Plaintiff filed a Complaint against the Plan, Local 1, and Mr. Riegger. In the Complaint, Plaintiff does not contend that he is entitled to additional pension benefits under the terms of the Plan, nor that those terms have been misinterpreted. Plaintiff instead asserts a claim for breach of fiduciary duty and equitable estoppel. The essence of his claim is that he received a lesser amount of pension benefits than he was led to believe he would receive based on the conversation he had with Mr. Riegger. Defendants answered the Complaint in January of 2014.

On April 25, 2015, Defendants Local 1 and Mr. Riegger moved for summary judgment. They argue that they are not fiduciaries of the Plan; that Plaintiff fails to show the "extraordinary circumstances" needed to prove equitable estoppel under ERISA; and that Plaintiff fails to show reasonable and detrimental reliance on any alleged misrepresentations.

On May 8, 2015, the Plan also moved for summary judgment. It argues that the Plan Trustees never made any material misrepresentations to Plaintiff; that Plaintiff failed to demonstrate reasonable or detrimental reliance, and that any alleged misstatements were not made by Plan fiduciaries.

Plaintiff opposes the motions. He argues that he has demonstrated that Defendants made material misrepresentations, and that this case presents extraordinary circumstances. He further urges that Local One is an agent of the plan, and that he detrimentally relied upon Mr. Riegger's misrepresentations.

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court "must view the evidence 'in the light most favorable to the opposing party.'" Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). The

court may not make credibility determinations or engage in any weighing of the evidence. Anderson, 477 U.S. at 255.

The showing required to establish that there is no genuine issue of material fact depends on whether the moving party bears the burden of proof at trial. On claims for which the moving party does not bear the burden of proof at trial, the movant must point out to the district court "that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. In contrast, "[w]hen the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish the existence of a genuine issue as to a material fact. Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001), overruled on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of the Int'l Union of Operating Eng'rs and Participating Emp'rs, 134 S. Ct. 773 (2014). However, the party opposing the motion for summary judgment cannot rest on mere allegations; instead, it must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; see also Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) (holding that "unsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment").

### B. Plaintiff's Claims

Plaintiff does not contend that he is entitled to additional pension benefits under the terms of the Plan. Instead, he asserts that he should receive additional funds due to principles of (1) equitable estoppel and (2) fiduciary duties. For the reasons explained herein, neither legal principle applies to the circumstances presented, and Defendants are therefore entitled to summary judgment.

#### i. ERISA Equitable Estoppel

ERISA permits a plan participant file a civil action for "appropriate equitable relief." 29 U.S.C. § 1132 (a)(3)(B). In the Third Circuit, a plaintiff who brings a claim for equitable estoppel under ERISA must demonstrate: "(1) a material representation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances." Burstein v. Ret. Account Plan For Employees of Allegheny Health Educ. & Research Found., 334 F.3d 365, 383 (3d Cir. 2003), as amended (Aug. 1, 2003) (quoting Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 235 (3d Cir.1994)). The burden to prove these three elements is on the plaintiff. Jenkins v. Union Labor Life Co., 543 F. App'x 180, 183 (3d Cir. 2013); Kurz v. Philadelphia Elec. Co., 96 F.3d 1544, 1554 (3d Cir. 1996). The Court will address these elements in turn. For reasons explained herein, Plaintiff has not met his burden.

#### 1. Material Misrepresentation

"A misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision." Curcio, 33 F.3d at 237 (quoting Fischer v. Philadelphia Elec. Co., 994 F.2d 130, 135 (3d Cir.1993)). Here, to satisfy this element, Plaintiff principally relies upon the allegation that Mr. Riegger erroneously told him that he was entitled to receive full pension benefits. Local 1 counters that its policy was to

refer all pension inquiries directly to the Plan, and that union officials would never provide members with an estimate of benefits. The Court will accept for purposes of analysis that a genuine issue of material fact exists as to whether Mr. Riegger's alleged statement constituted a material misrepresentation.

Plaintiff secondarily argues that the calculation sheets were also misleading. As illustrated in the factual background, and for reasons discussed below, the calculation sheets accurately state the amount of Plaintiff's reduced entitlement, and they therefore are not "material misrepresentations." Plaintiff also points to an annual benefits statement as being misleading, yet it expressly warns that the benefits outlined within it will be reduced if a retiree exits before the age of 58, which Plaintiff did. [Docket Entry 43, Doc. 3, Page 49 (estimating an accrued benefit of $2,717.77 at age 56, but then explicitly noting in capital letters, "YOU MAY RETIRE AS EARLY AS AGE 58 WITHOUT ANY REDUCTION IN YOUR PENSION IF YOU WORK UP TO THE DATE OF YOUR RETIREMENT.")]. That statement was issued under a cover letter which reads, "The actual pension payable to you upon retirement may be substantially different from the estimate shown if . . . you retire from the trade before your 58th birthday[.]" [Id. at 50]. This document is not materially misleading. Last, Plaintiff asserts that the official Plan documents, including the SPD, could have been clearer. The Court is unpersuaded that Plaintiff has identified any ambiguity in those documents, but even if he had, Plaintiff does not contend that he relied on any of them when deciding to begin withdrawing his pension benefits. Plaintiff indeed contends that he never received a copy of the SPD.

In light of the factual dispute over Mr. Riegger's statement, the Court proceeds to analyze the other elements of equitable estoppel.

## 2. Reasonable Reliance

To succeed on his equitable estoppel claim, Plaintiff must demonstrate reasonable and detrimental reliance on Mr. Riegger's alleged misrepresentation, which requires showing both "(1) reasonableness and (2) injury." Jenkins v. Union Labor Life Co., 543 F. App'x 180, 184 (3d Cir. 2013) (quoting Pell v. E.I. DuPont de Nemours & Co., 539 F.3d 292, 301 (3d. Cir. 2008)); see also CIGNA Corp. v. Amara, 131 S. Ct. 1866, 1881 (2011) ("[W]hen a court exercises its authority under § 502(a)(3) to impose a remedy equivalent to estoppel, a showing of detrimental reliance must be made."). "A party's reliance on a misrepresentation must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." Hein v. F.D.I.C., 88 F.3d 210, 221 (3d Cir. 1996) (internal citation and quotation marks omitted).

Reliance on misinformation is not reasonable if one receives documents that contain accurate, corrective information. See Jenkins, 543 F. App'x at 184-85 ("Even if one thought that the [] statement about eligibility for a pension plan meant that there was a defined benefit plan . . . there were several subsequent communications making it clear that no defined benefit plan participation was offered . . . . [A]ssuming [plaintiffs] did rely on those documents, that reliance was not reasonable in light of subsequent communications."); Hein v. F.D.I.C., 88 F.3d 210, 222 (3d Cir. 1996) ("In the face of such clear evidence that [plaintiff] did not qualify for unreduced early retirement benefits, the [employer's possibly misleading] letter . . . is insufficient support for his estoppel claim."); In re Unisys Corp. Retiree Med. Ben. ERISA Litig., 58 F.3d 896, 908 (3d Cir. 1995) ("[A] participant's reliance on employer representations regarding benefits may never be 'reasonable' where the participant is in possession of a written document notifying him of the conditional nature of such benefits.").

11

Here, that basic principle undermines Plaintiff's claim.  In April of 2010, after Plaintiff spoke with Mr. Riegger, the Plan's Benefits Office sent Plaintiff an application for benefits and the April 2010 calculation sheet.  That sheet states, in no uncertain terms, that if Plaintiff applied to receive his pension benefits -- which, at that time, he had not yet done -- his pension type would be "EARLY VESTED" (capitalization in original) and would be subject to a "50.00% = $1,411.83" reduction from the "normal benefit" of $2,823.66.  [Docket Entry 34, Doc. 23].  This page was not buried in a stack of papers, nor was this calculation one in a row of many; rather, Plaintiff's reduced benefit constituted the main, emphasized information on a single page.  In the face of clear, official calculations sent directly to Plaintiff from the Plan, it was unreasonable for Plaintiff to rely on an earlier, contradictory oral statement allegedly made by a union official. See Jenkins, 543 F. App'x at 184-85; Hein, 88 F.3d at 222; In re Unisys Corp., 58 F.3d at 908.

Plaintiff's reliance on Mr. Riegger was independently rendered unreasonable by each of the subsequent communications he received from the Plan.  In September of 2010, the Plan sent Plaintiff the September 2010 calculation sheet, which once again provided that while Plaintiff's "normal benefit" would be $2,823.66, he was applying for an "EARLY VESTED" pension type. [Docket Entry 34, Doc. 24 (capitalization in original)].  The same page also states that because of the payment type that Plaintiff selected, his benefit would be in the amount of $1,468.30.

Plaintiff then submitted a completed application for benefits.  On September 27, 2010, the Plan sent Plaintiff a final calculation of his benefits and instructed him to contact the Plan if anything was incorrect.  That final calculation sheet provided as follows:

> Normal Benefit: [] $2,823.66
> ….
> Pension Type: EARLY VESTED
> [Type] Reduc.:  52% = $1,468.30
> ….
> Payment Options      Factor           Benefit

12

    Straight Life    100.0000   $1,468.30

  [Id. at Pg. 36].

The final calculation sheet also tabulated the "total deductions" Plaintiff could expect due to his health care elections, and it further reported the "[n]et amount of pension payable to retiree (monthly)" as being "$672.30." [Id.]. Plaintiff admits that he received and reviewed this document. [Docket Entry 40, Par. 22]. He did not contact the Plan to address these calculations or the "net amount" of $672.30 that he was promised. This document alone gave Plaintiff ample notice of his actual entitlements, and Plaintiff therefore cannot have reasonably relied upon a union official's earlier estimate.

  The Court also notes that reliance upon Mr. Riegger was further unreasonable because Riegger lacked the authority to speak on the Plan's behalf. See Knoll v. Phoenix Steel Corp., 465 F.2d 1128, 1132 (3d Cir. 1972) (finding it unreasonable for union members to rely on union officer's promise where it was clear that benefits were determined by retirement board). The Court addresses this point more fully below with respect to Plaintiff's fiduciary duty claim.

  In the absence of reasonable reliance, the Court need not decide the concomitant requirement of an injury caused by the alleged misrepresentation. See Jenkins, 543 F. App'x at 184. It is enough to note that Plaintiff has the burden to demonstrate that he would have taken different action had he not been misinformed. Plaintiff's submissions to the Court suggest just the opposite: that he was unable to find "covered employment" and would have had tremendous difficulty in achieving eligibility for early retirement pension, let alone normal retirement. In a video statement provided to the Court, Plaintiff states that he would have had to "beg[], borrow[], [and/or] steal" to hold off on withdrawing his benefits. The evidence before the Court

thus suggests that Plaintiff was not led to begin receiving early payments due to wrong information, but rather due to financial necessity.

### 3. Extraordinary Circumstances

The final requirement of ERISA equitable estoppel is that Plaintiff demonstrate extraordinary circumstances. Burstein, 334 F.3d at 383; see also Engers v. AT&T, 466 F. App'x 75, 81 n.9 (3d Cir. 2011) (holding that Supreme Court decision in CIGNA Corp. v. Amara, 131 S.Ct. 1866 (2011) "does not alter" extraordinary circumstances requirement).

Extraordinary circumstances may be present in scenarios "where there are affirmative acts of fraud, where there is a network of misrepresentations . . . over an extended course of dealing, or where particular plaintiffs are especially vulnerable." Pell v. E.I. DuPont de Nemours & Co., 539 F.3d 292, 303-04 (3d Cir. 2008). The Third Circuit has held that "extraordinary circumstances generally involve acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan, or commission of fraud." Jordan v. Fed. Exp. Corp., 116 F.3d 1005, 1011 (3d Cir. 1997). It has similarly found extraordinary circumstances lacking absent "affirmative acts of fraud or similarly inequitable conduct by an employer" or a "network of misrepresentations that arises over an extended course of dealing between parties." Kurz v. Philadelphia Elec., 96 F.3d 1544, 1553 (3d Cir. 1996). Accordingly, courts reject "estoppel claims [that are] based on simple ERISA reporting errors or disclosure violations, such as a variation between a plan summary and the plan itself, or an omission in the disclosure documents." Id.

Here, Plaintiff's claim regarding an unauthorized estimate by a union official falls far short of the extraordinary circumstances required. The record presents no indicia whatsoever of affirmative fraud, active concealment, or a long-term network of misrepresentations. Quite the

opposite, the Plan consistently informed Plaintiff of his actual and accurate entitlement to pension benefits. At most, Plaintiff's contention amounts to a claim that he encountered a "reporting error" during one phone call; in addition to being legally insufficient to support a claim, id., that information was then corrected by those with knowledge and authority to speak on the subject, all before Plaintiff finalized his application for benefits.

Perhaps recognizing the absence of any extraordinary behavior on the part of Defendants, Plaintiff emphasizes the difficult circumstances he faced during this period. He highlights that many of Local 1's members lost work, which created a hostile environment and affected many members' pensions, and he asserts that he personally suffered exacerbated health problems, a foiled relationship, and overall difficulties. The Court does not discount that Plaintiff has experienced difficult circumstances. Plaintiff has not, however, demonstrated the kind of "particular vulnerability [involving] imminent and life threatening health emergencies to the plaintiff himself or to his family members" that is required. Araujo v. Kraft Foods Global, Inc., 387 F. App'x 212, 216 (3d Cir. 2010). Also cutting against Plaintiff's contention is his lack of diligence in verifying what Mr. Riegger allegedly said to him, and his failure to reach out to the Plan, both after he received calculation sheets demonstrating reduced benefits, and after he received his first electronic deposit. Cf. Pell, 539 F.3d at 304 (affirming District Court's reasoning that "repeated misrepresentations over an extended course of dealings between an employer and an employee are sufficient to demonstrate the existence of extraordinary circumstances, when, as here, it is clear that the employee has been diligent in inquiring into the employer's representations, in seeking clarifications about those representations, and in obtaining reaffirmations of those representations.") (emphasis added).

All told, Plaintiff has failed to demonstrate extraordinary circumstances. Plaintiff having also failed to demonstrate reasonable reliance, the Court is satisfied that summary judgment must be granted to Defendants on Plaintiff's equitable estoppel claim.

### ii.     Breach of Fiduciary Duty

"ERISA sets out certain obligations for fiduciaries." Burstein, 334 F.3d at 384. To demonstrate a cause of action for breach of a fiduciary duty, Plaintiff has the burden to demonstrate: "(1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation." Id. (quoting Daniels v. Thomas & Betts Corp., 263 F.3d 66, 73 (3d Cir.2001)); see also Araujo, 387 F. App'x at 217 (citing same elements). For numerous reasons, Defendants are also entitled to summary judgment on Plaintiff's fiduciary duty claim.

"In every case charging breach of ERISA fiduciary duty[], the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." Renfro v. Unisys Corp., 671 F.3d 314, 322 (3d Cir. 2011). That is because "29 U.S.C. § 1132(a)(3) does not authorize suit against nonfiduciaries charged solely with participating in a fiduciary breach." Id. at 325 (internal quotation marks omitted). Summary judgment is appropriate if a defendant was not acting as a fiduciary when engaged in the pertinent conduct. Edmonson v. Lincoln Nat. Life Ins. Co., 725 F.3d 406, 429 (3d Cir. 2013) cert. denied, 134 S. Ct. 2291 (2014). To sustain a claim against Defendants based on Riegger's alleged statement, therefore, Plaintiff must

demonstrate Riegger's "status as an ERISA fiduciary acting as a fiduciary" at the time of the alleged misrepresentation. Burstein, 334 F.3d at 384.

Under the terms of the ERISA statute, one is a fiduciary of a benefit plan if:

> (i) [H]e exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

[29 U.S.C. § 1002 (21)(A)].

Interpreting this provision, the Third Circuit has explained "that the linchpin of fiduciary status under ERISA is discretion." Curcio v. John Hancock Mut. Life Ins., 33 F.3d 226, 233 (3d Cir. 1994). The inquiry is "whether [the defendant] maintained any authority or control over the management of the plan's assets, management of the plan in general, or maintained any responsibility over the administration of the plan." Id. Moreover, "persons who perform purely ministerial tasks, such as claims processing and calculation, cannot be fiduciaries because they do not have discretionary roles." Bd. of Trs. of Bricklayers & Allied Craftsmen Local 6 of N.J. v. Wettlin Associates, Inc., 237 F.3d 270, 273 (3d Cir. 2001).

Here, the Plan is a multiemployer defined benefit pension plan. Under the Taft-Hartley Act, control over such plans is shared between employers and employee representatives. See 29 U.S.C. § 186(c)(5). The Plan Document provides that it is managed by its Board of Trustees, and that only the Trustees may interpret the Plan's provisions, including entitlement to benefits:

> In all actions regarding determinations concerning benefit eligibility, the Trustees shall be the sole judge of: (1) the standard of proof required in any case; (2) the application and interpretation of the Plan; (3) the amount of or entitlement to a pension; and, (4) the crediting of Future or Past Service.

17

[Docket Entry 31, Doc. 5, Pg. 52 (emphasis added)].

The Plan's SPD similarly provides that the Trustees will not be bound by information provided by other persons or entities. Neither Mr. Riegger nor other Local 1 officials were among the Plan's Trustees. There is no indication, moreover, that the Plan or its Trustees strayed from these provisions and affirmatively vested authority for Plan administration in Mr. Riegger or Local 1. In short, both legally and factually, the Plan is a separate entity from Local 1, and Local 1's officials are not fiduciaries of the Plan.

Plaintiff alternatively urges that even if Mr. Riegger did not have actual authority to exercise discretion under the Plan, he acted with apparent authority. Apparent authority "(1) results from a manifestation by a person that another is his agent and (2) exists only to the extent that it is reasonable for the third person dealing with the agent to believe that the agent is authorized." Pell v. E.I. DuPont de Nemours & Co. Inc., 539 F.3d 292, 301 (3d Cir. 2008). The Third Circuit limits "fiduciary liability to those employees on whom plan participants reasonably rely for important information and guidance about retirement" because "such individuals operate, at a minimum, within their apparent authority to provide such information and guidance to plan participants, on behalf of the plan administrator." Taylor v. Peoples Natural Gas Co., 49 F.3d 982, 988 (3d Cir. 1995) (internal quotation marks omitted).

Here, Plaintiff has failed to demonstrate that at the relevant time -- when Plaintiff and Mr. Riegger spoke by phone -- Mr. Riegger indicated that he exercised any discretion over or represented the Plan. Quite the opposite, Plaintiff testified in his deposition that Mr. Riegger provided him with the contact information for the Plan's Benefit Office, which should have indicated to Plaintiff that it was the Plan, and not Mr. Riegger, who could speak authoritatively to Plaintiff's entitlements. [Docket entry 31, Doc. 8, Pg. 17-18 ("Q: Did Mr. Riegger tell you

where to call? A: Yes.  Q:  What did he tell you?  A: If anything, call the pension plan . . . . Q: Okay.  And [] he gave you a telephone number for the National Elevator Pension Plan?  A: Yes.")].  If Plaintiff believed that Mr. Riegger could bind the Plan, such a belief was not reasonable.  See Knoll, 465 F.2d at 1132.

Plaintiff now points to certain overlaps between the Plan and Local 1 that might have indicated that the Plan indeed relied on Local 1.  Such overlap suggests, at most, that Local 1 exercised certain "ministerial tasks," which are insufficient to create fiduciary duties, Wettlin, 237 F.3d at 273, and Plaintiff has not contended that he was aware of those facts when he spoke with and relied upon Mr. Riegger.  The Plan did not affirmatively "manifest . . . that [Mr. Riegger or Local 1 was its] agent," Pell, 539 F.3d at 301, at the relevant time.  In short, as summarized by the Plan,

> Local 1 is a labor union and Riegger is an officer of a labor union. They are not a pension plan. They do not have a fund from which pension benefits are paid. They do not pay pension benefits to O'Blenis or to anyone else. They have no role or responsibility in the administration of the Pension Plan. They are not sponsors or trustees or administrators of the Pension Plan. They do not exercise any discretion in making Pension Plan decisions such as benefit levels, eligibility, and benefit accrual rates. The Pension Plan is governed by rules and regulations which were not developed by Local 1 or Riegger, and over which they have no control.

[Docket Entry 44, Pg. 5].

Had Plaintiff satisfied this threshold inquiry, he would nevertheless need to also demonstrate detrimental reliance.  Burstein, 334 F.3d at 384.  Detrimental reliance in a claim for fiduciary breach under ERISA "encompasses both an injury and reasonableness."  Shook v. Avaya Inc., 625 F.3d 69, 73 (3d Cir. 2010).  For reasons explained in the estoppel section above, Plaintiff cannot demonstrate reasonableness in relying on Mr. Riegger's statements in the face of unambiguous and clear calculations from the Plan which correctly set forth the amount of

Plaintiff's entitlement.  This constitutes another reason why Defendants are entitled to summary judgment on this claim.

## III.  CONCLUSION

For the reasons above, the Court finds that Defendants are entitled to summary judgment on both of Plaintiff's claims.  An appropriate Order will be filed.


                                                                            s/ Stanley R. Chesler
                                                                 STANLEY R. CHESLER
                                                        United States District Judge

Dated: August 12, 2015